IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


KADREN CARTER-RIPPY          )
On behalf of her minor son, A.A.P.          )
                                                              )
v.                                                            )          No. 3:15-1426
                                                              )
NANCY A. BERRYHILL          )
    Acting Commissioner of          )
    Social Security[1]          )


To:    The Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") terminating Childhood Supplemental Security Income ("SSI") previously awarded to her minor child, A.A.P., under Title XVI of the Social Security Act ("the Act").[2] The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which Defendant has responded. Docket Entry No. 19. Plaintiff has also filed a subsequent reply to Defendant's response. Docket Entry No. 20.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned magistrate judge respectfully recommends that Plaintiff's motion for

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] For purposes of clarity, the undersigned will refer to Plaintiff Kadren Carter-Rippy as "Plaintiff" or "Ms. Carter-Rippy," and will identify her son as "claimant" or "A.A.P."

1

judgment on the administrative record (Docket Entry No. 17) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report.

## I. INTRODUCTION

This case involves cessation of benefits. The Commissioner initially awarded Plaintiff SSI benefits on December 28, 2005. *See* Transcript of the Administrative Record (Docket Entry No. 13) at 60.[3] On April 20, 2011, after revisiting A.A.P.'s disability status, the Commissioner determined that A.A.P. no longer met the relevant disability requirements and thus discontinued his benefits. AR 74. This decision was confirmed upon reconsideration. AR 95-96. Pursuant to Plaintiff's request for a hearing before an administrative law judge ("ALJ"), Plaintiff and A.A.P. appeared with counsel and testified at a hearing before ALJ David A. Ettinger on September 25, 2013. AR 34. On April 16, 2014, the ALJ issued a decision unfavorable to Plaintiff. AR 14. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on October 1, 2015 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 13, 2010. AR 8. Based upon the record, the ALJ made the following enumerated findings:

---

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

2

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated December 14, 2005. This is known as the "comparison point decision" or CPD. At that time, the claimant was found to have developmental delays, specifically delayed mental and psychomotor development, which were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

*** 

2. There is evidence of medical improvement as of April 20, 2011 (20 CFR 416.994a(c)).

*** 

3. The claimant was born on May 8, 2003. Therefore, he is a school-aged child (20 CFR 416.926a(g)(2)).

4. Since April 20, 2011, the claimant has had the following severe impairments: attention deficit hyperactivity disorder (ADHD), and mixed receptive-expressive language disorder (20 CFR 416.924(c)).

*** 

5. Since April 20, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

*** 

6. Since April 20, 2011, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

*** 

7. The claimant's disability ended as of April 20, 2011, and the claimant has not become disabled again since that date (20 CFR 416.994a).

8. The claimant's subjective complaints have been evaluated as required under the applicable regulations and rulings.

*** 

AR 20-27.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v.*

*Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

### 1. Childhood Benefits

Section 1614(a)(3)(c)(i) of the Social Security Act provides that an individual under the age of eighteen is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Pursuant to 20 C.F.R. § 416.924, the ALJ must apply a three-part test to evaluate a child's disability: (1) whether the child is working; (2) whether the child has a severe medically determinable impairment; and (3) whether the child has an impairment that meets, medically equals, or functionally equals a listed impairment.

A child may also be found disabled if he has "a severe impairment or combination of impairments that does not meet or medically equal any listing … [but] results in limitations that

5

functionally equal the listings." 20 C.F.R. § 416.926a(a). In other words, the impairment or impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is, generally, an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). A child's functioning is assessed by considering how the child functions in his activities with respect to six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Each of these domains is assessed based on the age of the child—in this case, school-aged children, ages 6-12. 20 C.F.R. § 416.926a(g)(2).

### 2. Cessation of Benefits Framework

Recipients of disability benefits are subject to periodic review of their continued entitlement to such benefits. 20 C.F.R. § 416.994a(a). An individual is not entitled to a presumption of continuing disability merely because he received an award of disability benefits in the past. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 & n.1 (6th Cir. 1994) (explaining that the lower court erred by applying a presumption of continuing disability). The Commissioner must review the individual's evidence "on a neutral basis." 20 C.F.R. § 416.994a(a)(2).

In cases where a child who is already receiving benefits is the subject of continuing disability review, the Commissioner must first determine whether there has been a medical improvement in the condition that the child had at the time of the most favorable determination

6

of disability. *Id*. § 416.994a(b)(1). If there has been medical improvement, it must be determined whether the child's impairment still meets or medically/functionally equals the severity of the listed impairment that the child was previously determined to have met or equaled. *Id*. § 416.994a(b)(2). If the child in question still meets or medically/functionally equals the severity of the listed impairment under which he was previously found disabled, the disability will generally be deemed to continue unless one of the exceptions listed in 20 C.F.R. § 416.994a is met. *Id*. If the child's condition no longer meets or medically/functionally equals the severity of the listed impairment, the Commissioner must determine whether the child is currently disabled pursuant to the procedure described above for determining disability. *Id*. § 416.994a(b)(3).

On December 14, 2005, the claimant was found to have marked limitations under the "acquiring and using information" domain, marked limitations under the "moving about and manipulating objects" domain, and no limitations under the remaining domains. AR 21. Upon review of the claimant's disability status, the ALJ found that A.A.P.'s condition had improved and that, as of April 20, 2011, he no longer demonstrated marked limitations in these two domains of functioning or an extreme limitation in any of the remaining domains. AR 26-27. The ALJ therefore determined that the claimant's disability status ended on April 20, 2011. AR 27.

### C. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to the testimony of Ms. Carter-Rippy; (2) improperly weighing the evidence contained in A.A.P.'s school records; (3) failing to give proper weight to the treating physician's opinion; (4) failing to give proper weight to the opinions provided by the psychological examiner; and (5) failing to find that A.A.P. meets the requirements of Listing 112.11. DE 18 at 3-5. Plaintiff therefore requests that

the Commissioner's decision be reversed and benefits awarded, or, alternatively, that this case be remanded for further consideration and a new administrative hearing. *Id.* at 15.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The court addresses each of Plaintiff's assertions of error below.

### 1. Mother's testimony.

Plaintiff argues that the ALJ failed to give proper weight to the testimony of A.A.P.'s adoptive mother, Ms. Carter-Rippy.[4] Plaintiff quotes several regulations pertaining to the ALJ's assessment of credibility in a claim for childhood benefits, including the requirement that the ALJ not reject the statements of the individual "most familiar" with the minor claimant "solely because the available objective medical evidence does not substantiate [the individual's]

---

[4] Ms. Carter-Rippy adopted A.A.P. after his birth mother "tested positive for cocaine and marijuana." AR 39-40. Ms. Carter-Rippy advised a consultative examiner that she "retrieved [A.A.P.] from the hospital at the time of his birth." AR 481.

8

statements." 20 C.F.R. §§ 416.928(a), 416.929(c)(2).[5] In her subsequent reply brief, Plaintiff argues that the ALJ erred by failing to "state the standard being used to evaluate [Ms. Carter-Rippy's] testimony." DE 20 at 1.

Plaintiff cites the well-established principle that the ALJ must provide "specific reasons for his or her credibility determination in the Decision." *Simon on behalf of K.A.W. v. Colvin*, No. 3:13-cv-01245, 2017 WL 3184481, at *3 (M.D. Tenn. June 22, 2017) (citing 20 C.F.R. § 416.929). Yet the court in that opinion additionally noted that errors in the ALJ's credibility did not require remand if they constituted harmless error. *Id.* at *4 (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). An error is considered harmless if, "leaving the problematic reasoning aside ... the rest of the ALJ's reasons support [the credibility] finding." *Id.* (quoting *Riser v. Comm'r of Soc. Sec.*, No. 13-cv-11135, 2014 WL 1260127, at *16 (E.D. Mich. Mar. 26, 2014)).

In *Simon*, the court held that the ALJ's single reason explanation for according less weight to the subject claimant's testimony was not consistent with the evidence of record, and thus "insufficient to explain the weight given [to the claimant's] testimony." *Id.* In contrast, the ALJ in the instant matter provided ample justification for discounting Ms. Carter-Rippy's testimony. The ALJ discussed discrepancies between Ms. Carter-Rippy's statements and the record regarding A.A.P.'s background, including the circumstances of A.A.P's post-birth hospitalization. AR 22-23. The ALJ also referenced the psychoeducational assessment performed by senior psychological examiner Susan Dye, who noted that Ms. Carter-Rippy "provided unreliable information about [A.A.P.'s] development and current problems," as well as "a

---

[5] 20 C.F.R. § 416.928(a) has been removed and reserved effective January 18, 2017. Because Plaintiff's complaint was filed in December of 2015 (DE 1), however, the regulation is applicable to the undersigned's analysis.

9

number of contradictory statements" regarding the claimant's birth history. AR 23, 518-20, 526-28. The ALJ additionally highlighted a comment by a separate psychological examiner indicating that although Ms. Carter-Rippy did not seem to be deliberately misrepresenting the claimant's functioning, she seemed to overestimate the severity of A.A.P.'s impairment. AR 22, 484. Finally, the ALJ noted the discrepancies between Ms. Carter-Rippy's description of A.A.P.'s behavior and the reports of her sister, Joyce Patten, including Ms. Dye's statement that the information provided by Ms. Patten was "more consistent with [A.A.P.'s] history and available records." AR 23-24, 527.

The ALJ's credibility determination may not be disturbed "absent compelling reason." *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987)). Such a determination, even if based partially on invalid reasons, "will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013). Plaintiff claims that the ALJ failed to consider Ms. Carter-Rippy's statements as if they were the minor claimant's own descriptions of his symptoms, in violation of 20 C.F.R. 416.928(a) (DE 18 at 5-6), yet the ALJ explicitly discussed Ms. Carter-Rippy's testimony with respect to the severity of A.A.P.'s impairment before concluding that, "[a]lthough Ms. [Carter-Rippy] appears to be a sincere witness, the record establishes that she is not an accurate reporter of the claimant's behavior." AR 25. Plaintiff points to three reports documenting testing of A.A.P's cognitive and communicative functioning, yet two such reports specifically reference a lack of reliability with respect to Ms. Carter-Rippy's allegations (AR 480-85, 518-29), while the third contains a description of A.A.P's post-birth hospitalization from Ms. Carter-Rippy that is inconsistent with her other accounts, as noted by the ALJ. AR 22-23. The court thus finds that substantial evidence

10

supports the ALJ's determination and, to the extent that the ALJ failed to explicitly identify the weight given to Ms. Carter-Rippy's testimony, such an error is harmless.

### 2. Academic records.

Plaintiff next alleges that the ALJ improperly relied on unreliable school records to undermine Ms. Carter-Rippy's testimony. Plaintiff cites evidence indicating that the charter school attended by A.A.P., Drexel Preparatory Academy ("Drexel"), is now defunct in light of "improper maintenance of its special education" program, and therefore claims that the records from Drexel contained in the administrative record cannot serve as substantial evidence to support the ALJ's decision. DE 18 at 8-9.

Plaintiff's argument is unavailing. Plaintiff faults the ALJ for referencing records from Drexel in the opinion yet concedes that evidence of Drexel's shortcomings and ultimate closure was not available to the ALJ at the time of his decision. DE 18 at 7-8; DE 20 at 3. Evidence that was unavailable to the ALJ "cannot be considered by the court in its substantial evidence review[.]" *Perkins v. Apfel*, 14 F. App'x 593, 598 (6th Cir. 2001) (internal citations omitted). After Defendant noted this in its responsive brief, Plaintiff filed a reply brief in which she argued for the first time that this case should be remanded for consideration of this new evidence pursuant to sentence six of 42 U.S.C. § 405(g), which included minutes from a Board of Education meeting in which Drexel's failure to provide adequate services was discussed. DE 20 at 3-4.

Plaintiff claims that such evidence warrants remand pursuant to sentence six because it is a "significant and material factor in weighing the comparative credibility of the school and [Ms. Carter-Rippy]." *Id*. However, Plaintiff's failure to raise this argument in her initial brief constitutes waiver. *See Kuhn v. Washentaw County*, 709 F.3d 612, 624 (6th Cir. 2013)

("[A]rguments not raised in a party's opening brief ... are waived) (internal citation omitted); *Tennant v. Comm'r of Soc. Sec.*, No. 1:16-cv-29, 2016 WL 5799164, at *5 (W.D. Mich. Oct. 5, 2016) ("It is well established that a reply brief is not the proper place to raise new arguments. Arguments raised for the first time in a reply brief are waived."); *Nichols v. Comm'r of Soc. Sec.*, No. 1:12-cv-995, 2014 WL 4259445, at *9 (W.D. Mich. Aug. 28, 2014) (noting that the claimant's failure to raise an argument in his assertion of errors "should end the court's analysis, because issues not presented in the plaintiff's statement of errors are considered waived"). This principle ensures fairness because a defendant is unable to respond to issues raised for the first time in a reply brief. *See Bender v. Comm'r of Soc. Sec.*, No. 11-cv-1546, 2012 WL 3913094, at *8 (N.D. Ohio Aug. 17, 2012), *report and recommendation adopted,* 2012 WL 3913091 (N.D. Ohio Sept. 7, 2012) ("[T]he plaintiff cannot wait until its reply brief to assert new arguments because such a practice would effectively deprive the defendant of the opportunity to expose weaknesses in the plaintiff's arguments.") (citing *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008)).

Even assuming the request for sentence six remand is timely, Plaintiff fails to demonstrate that such action is warranted. Sentence six remand under 42 U.S.C. § 405(g) is available only if the requesting party demonstrates that the additional evidence at issue is (1) new, (2) material, and (3) that there was good cause for not submitting the evidence in the earlier proceeding. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Evidence is considered "new" if it did not exist at the time of the administrative hearing, *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal citation omitted), and "material" if it would "likely change the Commissioner's decision." *Bass*, 499 F.3d at 513 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "Good cause" is established if the requesting party

12

demonstrated a reasonable justification for failing to obtain the evidence before the administrative hearing. *Foster*, 279 F.3d at 357.

Plaintiff argues that evidence of Drexel's closing "would be a significant and material factor is weighing the comparative credibility of the school and the claimant's mother." DE 20 at 3. However, Plaintiff overstates the emphasis that the ALJ placed on the Drexel records in his credibility determination. It is true that the ALJ identified the records as "remarkable for the minor levels of limitation found and relatively mild remediation recommended." AR 24. Yet the majority of the ALJ's analysis focuses on test results and observations from other medical and educational professionals. The ALJ highlighted "well child" examinations of A.A.P. that were within normal limits, as well as a full scale IQ score of 93, which falls within the average range of intellectual functioning. AR 21, 456-57, 483. The ALJ referenced the observations of A.A.P.'s treating physician, Dr. Theodora Pinnock, which included "significant improvement [in] his ability to concentrate, follow directions and finish tasks." AR 22, 462. The ALJ also noted the inconsistencies in Ms. Carter-Rippy's testimony and her statements to various medical providers, as discussed *supra*. Such information represents substantial evidence in support of the ALJ's ultimate determination independent of whether the Drexel records were properly considered. *See Dalton v. Sec'y of Health & Human Servs.*, 908 F.2d 973 (6th Cir. 1990) ("The fact that the record may also contain substantial evidence in support of a different conclusion than that of the [Commissioner] is irrelevant .... [I]f the decision is supported by substantial evidence, the [Commissioner's] conclusion must stand.").

Based on the foregoing, the court finds no error in the ALJ's reliance on the Drexel records. With respect to Plaintiff's belated request for remand pursuant to sentence six, remand is appropriate "only if there is a reasonable probability that the [Commissioner] would have

reached a different disposition of the disability claim if presented with the new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988)) (internal quotations omitted). The ALJ provided substantial evidence to support his decision to discount Ms. Carter-Rippy's credibility exclusive of the Drexel records, as discussed above, thus making it unlikely that the ALJ would have reached a different conclusion. The court therefore rejects this assertion of error.

### 3. Treating physician's opinion.

Plaintiff next asserts that the ALJ erred by failing to give controlling weight to the opinion of Dr. Pinnock, A.A.P.'s purported treating physician. DE 18 at 10-11. Plaintiff claims that Dr. Pinnock's opinion finds support from "other medical sources" in the record, including the opinion of Sharon Edwards, a speech-language pathologist who performed a speech and language evaluation report in January of 2011. *Id.* at 11; AR 467-69.

Dr. Pinnock's opinion concluded that, with respect to the "B" criteria of Listing 112.11 (Attention Deficit Hyperactivity Disorder), A.A.P. has "marked" impairment in cognitive/communicative functioning, "moderate" impairment in social functioning, "moderate" impairment in personal functioning, and "marked" impairment in concentration, persistence, and pace. AR 535-36.[6] Regarding the six domains for consideration of functional equivalence under 20 C.F.R. § 416.926a(b)(1), Dr. Pinnock found that A.A.P. was subject to the following limitations: "moderate" impairment in acquiring and using information; "marked" impairment in attending and completing tasks; "moderate" impairment in interacting and relating with others;

---

[6] The Listings contained in 20 CFR Part 404, Subpart P, Appendix 1 have been amended as of March 27, 2017. However, because Plaintiff's complaint predated this amendment, the court relies on the pre-March 27, 2017 version of the regulation.

14

"moderate" impairment in moving about and manipulating objects; "moderate" impairment in caring for himself; and no impairment in health and physical well-being. AR 537-38.

Plaintiff quotes the applicable regulations requiring the ALJ to consider several different factors in determining the amount of weight to accord the opinion of the treating physician if the opinion is not given controlling weight, including the length and nature of the treatment relationship, the supportability and consistency of the opinion, as well as the specialization of the medical provider in question. *See* 20 C.F.R. § 416.927(c)(2)-(5). If the ALJ fails to provide good reasons for not giving controlling weight to the opinion of a treating physician, "remand may be required." *Reagan v. Colvin*, 47 F. Supp. 3d 648, 661 (E.D. Tenn. 2014) (citing *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011)). *See also Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) ("[T]he ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.") (quoting *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011)).

The ALJ rejected Dr. Pinnock's opinions by noting their inconsistency with other evidence in the record. *See* AR 25. In response to Dr. Pinnock's claim that A.A.P. demonstrated "marked impairment in his school and home performance" (AR 533), the ALJ pointed to Dr. Pinnock's own observations of A.A.P. during class on April 21, 2010, including her statement that "[d]uring the entire time I was in class, [A.A.P.] sat quietly at his desk and was working on an assigned task." AR 25, 458. The ALJ noted the unremarkable observations from Dr. Pinnock's subsequent classroom visit in December of 2010, during which the teacher "read the class a story and [A.A.P.] answered a couple of questions." AR 22, 462. Notably,

Dr. Pinnock also stated that A.A.P. "is showing significant improvement on his ability to concentrate, follow directions and finish tasks." AR 462.

The ALJ also highlighted Dr. Pinnock's reference to the assessment provided by A.A.P.'s teacher, who said that A.A.P. "is greatly improved .... He is doing all his work, completing tasks and staying on task .... [H]e is getting 'excellents' on most of his work and his behavior is great." AR 25, 458. As to Dr. Pinnock's claim that A.A.P. has "marked" impairment in cognitive/communicative functioning, the ALJ noted recent tests demonstrating that the claimant has a full scale IQ of 93. AR 26, 483. The ALJ also referenced the findings of Ms. Edwards, whose most severe finding was that A.A.P. had a "moderate" expressive language impairment. AR 26, 469.

Plaintiff's brief does not attempt to refute the ALJ's findings. Plaintiff instead points to a consultative examination report completed by psychologist Deborah Doineau in which it was noted that A.A.P. had "moderate to marked" limitations in adaptability based on recent testing. AR 485. Plaintiff fails to identify how this finding supports any of Dr. Pinnock's opinions, however, which is particularly problematic in light of Dr. Doineau's subsequent statement that this finding regarding A.A.P's adaptive functioning was "invalid." *Id*. The court also notes that Dr. Doineau's additional findings include a "mild-to-moderate" limitation in understanding and remembering, a "moderate" limitation in sustaining concentration and pace, and a "mild" limitation in social functioning (*id.*), all of which undermine Dr. Pinnock's opinion that A.A.P. suffers from more severe restrictions in these areas. *See* AR 535-37.

Although Plaintiff also cites a finding by Ms. Edwards, the speech pathologist, that A.A.P. has a "moderate" expressive language impairment, this conclusion appears to undermine Dr. Pinnock's finding that A.A.P. suffers from a "marked" impairment in cognitive and

communicative functioning. AR 535. As discussed above, the ALJ cited this same finding to discount Dr. Pinnock's opinion. *See* AR 26. Ms. Edwards also found that A.A.P. had normal receptive language skills, as well as normal articulation skills, fluency skills, and vocal parameters (AR 469), which are results that tend to further undermine Dr. Pinnock's finding of a "marked" impairment in cognitive and communicative functioning.

Nevertheless, Plaintiff emphasizes the scope of Dr. Pinnock's treatment with A.A.P.: "Given the evidence of the treatment relationship between Dr. Pinnock and A.A.P. and her familiarity with A.A.P., the ALJ erred in not giving controlling weight to the conclusions of Dr. Pinnock." DE 18 at 11. While the extent of a source's treatment is indeed a factor for consideration under 20 C.F.R. § 416.927(c)(2), it does not cure a lack of evidence to support the treating physician's conclusions. *See Cutlip*, 25 F.3d at 287 ("The [Commissioner] ... is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary.") (internal citations omitted). Moreover, Dr. Pinnock appears to have been less familiar with A.A.P.'s medical history than Plaintiff alleges, as she repeatedly stated that the claimant suffered from "chronic child abuse and neglect" (AR 511-12, 515, 517. 533), yet Ms. Carter-Rippy testified that she adopted A.A.P. as soon as he was released from the hospital. AR 41, 518. The ALJ noted that such references to child abuse and neglect were "puzzling" based on the lack of reference to such allegations anywhere else in the record. AR 22.

The treating physician's opinion is "only accorded great weight when [it is] supported by sufficient clinical findings and [is] consistent with the evidence." *Cutlip*, 25 F.3d at 287. (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)). The ALJ provided a detailed discussion of how Dr. Pinnock's opinion was not supported by such evidence, and Plaintiff's brief fails to identify any relevant evidence to the contrary. This assertion of error is

thus rejected. However, as discussed below, the issue will be rendered irrelevant if the Report and Recommendation is accepted as the treating physician's opinion will be given additional consideration on remand.

### 4. The opinion of Susan Dye, M.A.

Plaintiff contends that the ALJ "should have given more weight" to the opinion expressed by Ms. Dye, a senior psychological examiner, in her psychoeducational assessment.[7] DE 18 at 12. Ms. Dye concluded that A.A.P. showed "marked" impairment in three areas: communication and comprehension, personal functioning, and reading comprehension and written expression. AR 528.

As part of her argument, Plaintiff erroneously cites the two-prong standard for evaluating whether controlling weight is given to the opinion of a *treating* physician (DE 18 at 13), as outlined by the Sixth Circuit. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). Ms. Dye is not a treating physician, but instead an examining psychological examiner, whose opinion "is not entitled to any special deference." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Nonetheless, the ALJ must adequately "explain the weight given to opinions of examining sources." *Wilburn v. Astrue*, No. 3:10-0008, 2010 WL 6052397, at *6 (E.D. Tenn. Sept. 13, 2010), *report and recommendation adopted*, 2011 WL 891022 (E.D. Tenn. Mar. 11, 2011).

In his opinion, the ALJ stated that he "put great weight on [Ms. Dye's] detailed clinical observations and test results." AR 23. However, this statement does not appear to comport with the ALJ's ultimate decision to reject two out of the three opinions provided by Ms. Dye regarding the severity of A.A.P.'s impairments. Specifically, the ALJ rejected Ms. Dye's

---

[7] Ms. Dye's conclusions were cosigned by Dr. Doris Wossum, a clinical psychologist. AR 529.

18

assessment that A.A.P. was "markedly" impaired in (1) personal functioning and (2) reading comprehension and written expression. AR 528.[8] With respect to personal functioning, the ALJ provided the following explanation:

> [M]s. Dye explicitly found that Ms. [Carter-Rippy] was not a reliable reporter. The claimant's aunt reported to Ms. Dye that the claimant could have awful behavior on bad days; that he sometimes bumped his head against the wall in frustration, laughed at things that were not funny and acted silly; that he needed more one-on-one attention than his siblings; and that he became easily upset when his homework was difficult. Without minimizing these behaviors, they are not consistent with markedly impaired personal functioning.

AR 26.[9] Despite the ALJ's dismissal of such behavior, A.A.P's aunt additionally stated that he was "prone to agitation" and needed more adult monitoring than his siblings, all of whom are children with special needs. AR 42, 528. One of A.A.P.'s teachers noted that he demonstrated "significant conduct problems" and "atypical behaviors," while Ms. Dye's cognitive testing also revealed "markedly low scores in some areas, a finding likely related to behavior and effort." AR 526-27. This appears to be consistent with medical records indicating that A.A.P. was "getting into lots of trouble in summer camp and home" months before his disability allegedly ceased. AR 27, 457. Moreover, it is unclear how Ms. Carter-Rippy's failure to provide a reliable account of A.A.P.'s behavior undermines Ms. Dye's conclusions pertaining to personal functioning in light of Ms. Dye's explicit acknowledgement that A.A.P.'s aunt, and not Ms. Carter-Rippy, provided more consistent information for purposes of evaluating A.A.P.'s personal functioning. AR 527.

---

[8] Ms. Dye additionally found that A.A.P. had a "longstanding and marked impairment in communication and comprehension due to a language disorder and exacerbated by ADHD symptoms." AR 528.

[9] A "marked" limitation involves an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

19

In rejecting Ms. Dye's opinion as to reading comprehension and written expression, the ALJ referenced A.A.P.'s "basic reading standard score of 76 and his written expression standard score of 80" on the Woodcock-Johnson Psycho-Educational Battery-III test ("WJ-III"). AR 26. The ALJ attributes these scores to testing administered by Ms. Dye and Dr. Doineau (AR 26), yet the scores are not contained in the reports prepared by either of these examiners. *See* AR 480-85, 518-29. Dr. Doineau did not even administer the WJ-III, while Ms. Dye's testing represented at least part of the basis for her conclusion that A.A.P. was markedly impaired in reading comprehension and written expression. AR 528. Furthermore, Ms. Dye did not attach any scores to the WJ-III testing but instead spoke generally about the results, which included statements such as "[h]is reading comprehension was in the deficient range, consistent with his difficulty with verbal comprehension on other tasks" (AR 525), and "[A.A.P.'s] scores on writing tests showed effects of his language difficulties." AR 526.

To recap, the ALJ claims to have accorded "great weight" to Ms. Dye's clinical observations but rejected her opinion that A.A.P. suffers from marked impairment in personal functioning, reading comprehension, and written expression, which was based in part on clinical observations. The ALJ also gave "great weight" to Ms. Dye's test results, yet rejected her finding of marked impairment in the aforementioned areas based on WJ-III test scores that do not appear to exist. The ALJ additionally rejected Ms. Dye's conclusion regarding personal functioning based on Ms. Carter-Rippy's inconsistent description of her son's symptoms, yet Ms. Dye specifically acknowledged this and noted that the information provided by A.A.P.'s aunt was more reliable, which suggests that Ms. Dye factored Ms. Carter-Rippy's uneven account into her final conclusion. As such, the ALJ did not provide any legitimate reason for rejecting Ms. Dye's opinion, which is fatal to his ultimate decision. *See Vrabel v. Comm'r of Soc. Sec.*, No. 14-

12673, 2015 WL 5244358, at *7 (E.D. Mich. Sept. 8, 2015) ("An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any.") (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)

While the opinion of an examining physician is not necessarily entitled to as much weight as one provided by a treating physician, the ALJ is still required to explain the weight given to the opinion of an examining source based on the evidence of record. *Wilburn*, 2010 WL 6052397, at *6. *See also Whitfield v. Astrue*, No. 3:07-cv-1091, 2009 WL 1684489, at *2 (M.D. Tenn. June 15, 2009) (noting that an ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record) (citing *Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir. 2002)). In explaining his conclusion, the ALJ is not permitted to mischaracterize evidence to support his determination. *Stanfield v. Colvin*, No. 2:12-cv-213-KSF, 2013 WL 3935071, at *3 (E.D. Ky. July 30, 2013) (citing *Cornett v. Benham Coal, Inc.,* 227 F.3d 569 (6th Cir. 2000)). *See also Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) ("While an ALJ 'need not discuss every piece of evidence in the record' he also 'may not ignore an entire line of evidence that is contrary to the ruling.'") (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004)). The ALJ in the instant case failed to support his rejection of Ms. Dye's conclusion with substantial evidence and in fact misrepresented evidence in his explanation for the rejection, thus necessitating remand of this matter for additional consideration. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) ("[I]naccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand.").

21

Accordingly, the court therefore finds this assertion of error well-taken and recommends that this matter be remanded based on the lack of substantial evidence to support the ALJ's decision to reject the opinion of Ms. Dye and Dr. Wossum.

**5. Listing 112.11.**

Plaintiff finally asserts that the ALJ erred by concluding that A.A.P. does not meet the requirements of Listing 112.11, and alternatively claims that A.A.P. "meets the test for functional equivalence." DE 18 at 14-15. Plaintiff correctly notes that A.A.P. has been diagnosed with ADHD, yet it is well-established that the mere diagnosis of an impairment without accompanying functional limitations does not demonstrate the existence of a disabling condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Plaintiff's brief reference to Ms. Carter-Rippy's testimony is similarly unavailing based on the significant inconsistency in her various reports of A.A.P.'s symptoms and background, as previously discussed.

Plaintiff cites no other evidence to support a finding that A.A.P. meets the requirements of Listing 112.11. While her brief cites the opinions of various providers regarding A.A.P.'s alleged limitations, Plaintiff's arguments are futile because they fail to prove that the ALJ's opinion was not supported by substantial evidence. *See Peterson*, 552 F. App'x at 540 ("Merely marshalling evidence to suggest that [the claimant] is disabled, however, is insufficient; to prevail on appeal, [claimant] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence.").

Nevertheless, the court reiterates that, should the instant Report and Recommendation be accepted, the evidence of record will be given additional attention thereby rendering this assertion of error moot.

# V. RECOMMENDATION

For the above stated reasons, the undersigned magistrate judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 17) be GRANTED, and that the Commissioner's decision be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge