# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KARDEN CARTER-RIPPY, *on behalf of* her minor son, A.A.P., )<br><br>　　Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>**Acting Commissioner of Social Security,** )<br>)<br>　　Defendant. ) | Case No. 3:15-cv-01426<br>Judge Aleta A. Trauger |

## MEMORANDUM & ORDER

Plaintiff Karden Carter-Rippy seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("SSA") terminating Childhood Supplemental Security Income ("CSSI") previously awarded to her minor child, A.A.P., under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383(c).[1] On October 11, 2017, the magistrate judge filed a Report and Recommendation ("R&R") (Doc. No. 23), recommending that the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) be granted, that the decision of the SSA be reversed, and that this matter be remanded for further administrative proceedings. Now before the court are the SSA's Objections to the Magistrate Judge's Report and Recommendations [sic] (Doc. No. 24). For the reasons discussed herein, the court finds that the Objections have merit. The court will reject that portion of the R&R to which objections are lodged, adopt and accept the portion of the R&R to which no objections have been raised, deny the plaintiff's Motion for Judgment on the Administrative

---

[1] For purposes of clarity, the undersigned will refer to Ms. Carter-Rippy as "the plaintiff" or "Ms. Carter-Rippy," and will identify her son as "claimant" or "A.A.P."

Record, and affirm the SSA's denial of benefits.

I.      PROCEDURAL BACKGROUND

The SSA initially awarded CSSI benefits to A.A.P. in December 2005, when the claimant was two and one-half years old. (*See* Tr. of Admin. Record ("AR"), Doc. No. 13, at 57, 60.[2]) After a continuing disability review in 2011, when A.A.P. was almost eight, the SSA discontinued benefits based on a determination that A.A.P. was no longer disabled. (AR 58–59, 74.) The decision was confirmed upon reconsideration. (AR 95–96.) The plaintiff requested a *de novo* hearing and a decision by an Administrative Law Judge ("ALJ"). (AR 109.) After the hearing, at which the plaintiff and A.A.P. appeared with counsel, the ALJ issued a decision unfavorable to the claimant (AR 14–27), and the Appeals Council denied review (AR 1–3), rendering the ALJ's decision the "final decision" of the SSA.

The plaintiff thereafter filed this civil action on behalf of A.A.P. The SSA answered and filed a complete copy of the Administrative Record. On August 12, 2016, the plaintiff filed her Motion for Judgment on the Administrative Record along with a supporting brief. (Doc. Nos. 17, 18.) In support of her motion, the plaintiff argues that the ALJ (1) failed to give proper weight to the evidence presented by A.A.P.'s mother, Ms. Carter-Rippy; (2) accorded too much weight to school and IEP records; (3) failed to give proper weight to A.A.P.'s treating physician's opinion; (4) failed to give proper weight to the opinion of the psychological examiner; and (5) erred in concluding that A.A.P. did not meet Listing 112.11 of the Social Security Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.11.

In response, the SSA argues generally that substantial evidence supports the ALJ's

---

[2] The court will refer to specific pages of the AR by the Bates number stamped at the lower right corner of each page of the record, rather than by the CM/ECF pagination of Document No. 13.

determination that A.A.P. does not meet or equal Listing 112.11 and does not have marked or extreme limitations, and that the ALJ properly evaluated all of the evidence in the Administrative Record. (Doc. No. 19.) The plaintiff filed a Reply, contesting the ALJ's failure to specify the standard used to evaluate the testimony of Ms. Carder-Rippy and pointing to evidence in the record suggesting that the available school records are unreliable. (Doc. No. 20.)

The magistrate judge issued the R&R on October 11, 2017. The magistrate judge rejects each of the plaintiff's arguments except her assertion that the ALJ improperly weighed the opinion of the psychological examiner. (R&R at 20.) With respect to that claim of error, the magistrate judge found that the "ALJ claim[ed] to have accorded 'great weight' to [the psychological examiner's] clinical observations but rejected her opinion that A.A.P. suffers from marked impairment in personal functioning, reading comprehension, and written expression, which was based in part on clinical observations," and concluded that the ALJ's failure to provide "any legitimate reason for rejecting [the] opinion [was] fatal to his ultimate decision." The SSA filed timely Objections (Doc. No. 24), arguing that the ALJ was free to accord great weight to the psychological examiner's observations without accepting all of her conclusions. The plaintiff argues in her Response (Doc. No. 25) that the magistrate judge correctly concluded that the ALJ's treatment of the psychological examiner's opinion was improper. The plaintiff did not file her own objections to any other findings or conclusions in the R&R, even though the law clearly contemplates that "any party may serve and file written objections" to a magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1).

## II. FACTUAL BACKGROUND

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence in the administrative record. The court presumes familiarity with the record

and will discuss in detail only those matters necessary for the consideration of the defendant's Objections. For purposes of the clarity of this opinion, it suffices to explain that A.A.P. began receiving CSSI benefits in December 2005, based on a determination that his impairments—delayed mental and psychomotor development—functionally equaled a listed impairment. He is now thirteen years old and has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and mixed receptive-expressive language disorder. (AR 511, 517, 529.)

The ALJ found, and the plaintiff does not dispute, that A.A.P. had experienced medical improvement since the December 2005 comparison point decision. He deemed the claimant's ADHD and language disorder to be severe impairments that did not, individually or in combination, meet or equal a listed impairment. The real question before the ALJ, and the issue the parties dispute now, is whether the claimant has an impairment or combination of impairments that functionally equals the listings. The ALJ found that he does not, based in part upon his consideration and weighing of the opinion of S. June Dye, M.A., the psychological examiner. Although he purported to give "great weight" to Ms. Dye's clinical observations and testing, he ultimately rejected two of her three conclusions regarding A.A.P.'s limitations, as discussed in greater detail below.

## III. THE DEFENDANT'S OBJECTIONS

In the Objections, the SSA argues that, contrary to the magistrate judge's suggestion, the ALJ was entitled to give great weight to Ms. Dye's observations while giving less weight to her ultimate conclusions, that the ALJ's determinations were supported by substantial evidence in the record, and that the magistrate judge was incorrect in noting that certain scores identified by the ALJ were not contained in the report prepared by Ms. Dye.

In her Response, the plaintiff contends that the SSA incorrectly characterizes Ms. Dye's

opinion as that of an "other source", rather than as an "acceptable medical source", and that the ALJ does not have the medical expertise to draw his own conclusions from Ms. Dye's observations, thus substituting his own opinions for those of a trained therapist. (Doc. No. 25.)

### III. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a specific objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### IV. SOCIAL SECURITY STANDARDS

In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, thereby, entitled to benefits. 42 U.S.C. § 405(h). The court's review of an ALJ's decision is limited to a determination of (1) whether the ALJ applied the correct legal standards and (2) whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "[T]he Commissioner's failure to apply correct legal standards, or to show us that she has done so, [is] . . . grounds for reversal." *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (internal quotation marks and citation omitted); *see also Blakley*, 581 F.3d at 409

(stating that, even if the ALJ's ultimate decision is supported by substantial evidence, a procedural error requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

Additionally, each individual who has already been determined to be disabled is subject to periodic review of his continued entitlement to benefits. 20 C.F.R. § 416.994a(a). When the cessation of benefits is at issue, as here, the central question is whether the claimant has experienced "medical improvement," which is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a. There is no presumption of continuing disability, *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 285, 286–87 & n.1 (6th Cir. 1994), but "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue*, 247 F. App'x 761, 765 (6th Cir. 2007); *see also* 42 U.S.C. § 423(f) (providing that a decision to terminate benefits must be supported by substantial evidence demonstrating medical improvement and that the individual is now able to work).

With respect to evaluating a child's medical improvement, the SSA applies the procedures outlined in 20 C.F.R. § 416.994a. First, the SSA must determine "whether there has been medical improvement in [the] impairment(s)" that formed the basis for the disability determination. 20 C.F.R. § 416.994a(a)(1). If there is no medical improvement, childhood disability generally will be determined to continue. *Id.* If there is medical improvement, then at step two, a determination must be made as to whether the impairment(s) meets or medically equals the severity of the Listed Impairment it met or equaled at the time of the "comparison point decision" or "CPD." If not, then at step three, the SSA must determine whether the child remains disabled, considering the child's current impairments. This analysis is conducted

pursuant to 20 C.F.R. § 416.924(c) and (d) and resembles the typical adult disability step analysis, as it involves a determination of whether the impairment or combination of impairments is severe; if severe, whether the impairment meets or medically equals a listed impairment; and if not, whether the impairment or combination of impairments is functionally equivalent to a Listing. *See* 20 C.F.R. §§ 924(c), 416. 994a (b)(3)(i).

In determining functional equivalence, the SSA assesses six broad areas of functioning, called "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (5) health and physical well being. 20 C.F.R. § 416.926a(b)(1). Listing level severity is met where a claimant has "marked" limitation in two or more of the domains, or an "extreme" limitation in one or more domains. 20 C.F.R. § 416.926a(d). If the child's current impairment functionally equals a Listing, disability continues. If it does not, disability has ended.

## V. ANALYSIS

Based on the defendant's Objection, the court conducts a *de novo* review of June Dye's evaluation.

Ms. Dye is the psychological examiner who performed a "Comprehensive Psycho-Educational Assessment" of A.A.P., in August and September 2013. (AR 523–37.) At the time Dye evaluated A.A.P. he was ten years old and in the fifth grade at Drexel Academy. Ms. Dye began her assessment by summarizing A.A.P.'s family history, previous test results, current diagnosis and treatment, behavioral reports, and school records. She observed A.A.P. in her own office during testing and in a classroom setting, obtained reports from two teachers and the claimant's mother (the Behavior Assessment System for Children–Second Edition (BASC-2) Parent Report and Teacher Reports) (AR 526, 532), and also administered a number of her own

tests over the course of two sessions with A.A.P. The tests she administered included the Oral and Written Language Scales ("OWLS"), Listening Comprehension subtest, Test of Word Reading Efficiency ("TOWRE"), Wechsler Intelligence Scale for Children–Fourth Edition ("WISC-IV"), and the Woodcock-Johnson Psycho-Educational Battery–III Normative Update ("WJ-III"). (AR 521, 523–25, 530–531.) Ms. Dye provided detailed notes regarding her observations and the results of her examination and testing and found generally that A.A.P. was deficient in the area of language and communication skills. Although she recognized inconsistencies in the reports regarding A.A.P.'s behavior and was unsure of the validity of her own test results, she nonetheless assessed A.A.P. as having "[l]ongstanding and marked impairment in communication and comprehension due to a language disorder and exacerbated by ADHD symptoms," "[m]arked impairment in personal functioning . . . manifested primarily at home . . . and to a lesser extent at school," and "[m]arked impairment in reading comprehension and written expression associated with his language disorder." (AR 528.)

In his written opinion, the ALJ summarized Ms. Dye's findings at some length (AR 23–24) and noted that, although Ms. Dye was not a treating source, he put "great weight on her detailed clinical observations and test results." (AR 23.) In the end, however, he did "not accept examiner Dye's ultimate conclusions that claimant is markedly impaired in personal functioning at home and markedly impaired in reading comprehension and written expression." (AR 26.) He explained:

> With respect to personal function, Ms. Dye explicitly found that Ms. [Carter-]Rippy was not a reliable reporter. The claimant's aunt reported to Ms. Dye that the claimant could have awful behavior on bad days; that he sometimes bumped his head against the wall in frustration, laughed at things that were not funny and acted silly; that he needed more one-on-one attention than his siblings; and that he became easily upset when his homework was difficult. Without minimizing these behaviors, they are not consistent with markedly impaired personal functioning. Ms. Dye's opinion that claimant was markedly impaired in

> reading comprehension and written expression is inconsistent with his scores on the Woodcock-Johnson Psycho-Educational Battery–III and in particular with his basic reading skills standard score of 76 and his written expression standard score of 80. Exhibits 18F and 25F.
>
> . . . . Classroom observation by both Dr. Pinnock and examiner Dye did not reveal any behavioral problems, or at least no behavior in any way more remarkable than that of other students. IEPs do not document or address any behavioral issues.

(AR 26.) Consequently, the ALJ found that A.A.P. had a "less than marked limitation in acquiring and using information and in attending and completing tasks, for the reasons set forth above, including test results, classroom observations, and the provisions of his IEP" and "no evidence of any limitation in interacting and relating with others." (AR 26.)

In her Motion for Judgment, the plaintiff asserted that the ALJ should have given greater weight to Ms. Dye's opinions and should have applied the standard for determining whether controlling weight should be given the opinion of a treating physician. The magistrate judge classified Ms. Dye as an "examining psychological examiner," whose opinion "is not entitled to any special deference." (R&R at 18 (citing *Peterson v. Comm'r of Soc. Sec.*, 52 F. App'x 533, 538 (6th Cir. 2014)).) She recognized that the ALJ must "explain the weight given to opinions of examining sources." (*Id.* (quoting *Wilburn v. Astrue*, No. 3:10-0008, 2010 WL 6052397, at *6 (E.D. Tenn. Sept. 13, 2010), *report and recommendation adopted*, 2011 WL 891022 (E.D. Tenn. Mar. 11, 2011)).) The magistrate judge noted that the ALJ purported to give great weight to Ms. Dye's clinical observations but rejected her opinions that were based in part on those clinical observations. The ALJ also accepted the test results, "yet rejected [Ms. Dye's] finding of marked impairment in the [areas of reading comprehension and written expression] based on WJ-III test scores that do not appear to exist." (R&R at 20.) While the magistrate judge is correct that the ALJ's reference to the exhibit in which Dr. Doineau's assessment is found appears to be mistaken, as Dr. Doineau did not administer the WJ-III test (*see* AR 480-85), the magistrate

judge overlooked the WJ-III test results appended to Ms. Dye's report, which indeed show a Basic Reading Skills score of 76 and Written Expression score of 80. (AR 531.) In large part for that reason, the magistrate judge concluded that the ALJ did not provide adequate reasons for rejecting Ms. Dye's opinion regarding A.A.P.'s impairment in reading comprehension and written expression. She also found that the ALJ did not provide adequate reasons for rejecting Ms. Dye's conclusion regarding personal functioning. (R&R at 20.)

The court disagrees. As the magistrate judge correctly observed, an ALJ must explain the weight given the opinion of an examining source. *See* 20 C.F.R. § 416.927(f)(2)("The adjudicator generally should explain the weight given to opinions from these [non-treating] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). Here, the ALJ provided such an explanation. As set forth above, the ALJ noted that Ms. Dye based her "marked" impairment assessment of A.A.P.'s personal functioning on reports from Ms. Carter-Rippy, despite acknowledging that Ms. Carter-Rippy "provided unreliable information about [A.A.P.'s] development and current problems." (AR 26, 527.) The ALJ also noted that "[c]lassroom observation by both Dr. Pinnock and examiner Dye did not reveal any behavioral problems, or at least no behavior in any way more remarkable than that of other students. IEPs do not document or address any behavioral issues." (AR 26.) The ALJ also noted that the "marked" impairment finding with respect to reading comprehension and written expression was inconsistent with A.A.P.'s scores on the WJ III test, which fell in the "below average" range (AR 524–25) and therefore did not support a finding of "marked" impairment. *Accord Triplett v. Astrue*, No. 3:12-CV-42-JMH, 2012 WL 6706163, at *5 (E.D. Ky. Dec. 26, 2012) (affirming the ALJ's decision

to discount an examining physician's opinion because it was "internally inconsistent"). Notably, Ms. Dye also indicated that questionnaires completed by multiple respondents as part of the testing "varied considerably" (AR 526), warned that the validity of the scores derived from her testing were "questionable" (AR 524), and advised that the test results "should be interpreted with much caution" (AR 527), which tends to undermine the validity of Ms. Dye's opinions regarding functional limitations. *See Glasgow v. Comm'r of Soc. Sec.*, No. 16-4213, 2017 WL 2628893, at *2 (6th Cir. June 19, 2017) (affirming the ALJ's decision to discount examining physician's opinion based on "unreliable" testing).

The plaintiff does not dispute these findings and instead argues that, under *Reeves v. Reeves v. Commissioner of Social Security*, 618 F. App'x 267, 275 ( 6th Cir. 2015), an ALJ can reject any combination of individual opinions offered by an examining source "*while simultaneously rejecting* the related observations that led to such opinions" (Doc. No. 25, at 3), but that *Reeves* does not countenance an ALJ's adoption of a medical source's observations while rejecting the opinions derived from such observations. She contends that "a bifurcation of observations from opinions that allows an ALJ untrained in therapy to substitute his medical opinions based on a trained therapist's observations places the ultimate medical determination in the hands of a lesser qualified individual." (Doc. No. 25, at 3.)

The court rejects this argument, at least in the context of this case. It does not require a medical degree to detect the inconsistencies between Ms. Dye's observations and her eventual opinions. Moreover, the ALJ provided good reasons for his decision to reject the opinions. Although there is arguably sufficient evidence in the record that would have supported adopting Ms. Dye's opinions, there is also substantial evidence supporting the ALJ's determination to the contrary. Because substantial evidence supports the ALJ's decision to discount Ms. Dye's

opinion and the ALJ provided good reasons for that decision, the court is compelled to accept that decision.

## VI. CONCLUSION

Finding the defendant's Objections to have merit, the court **MODIFIES** the magistrate judge's R&R (Doc. No. 23) by rejecting part IV.C.4 thereof and substituting the analysis set forth in this Memorandum.

The remainder of the R&R, to which no objections were lodged, is **ACCEPTED AND ADOPTED**.

The plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) is **DENIED**. The SSA's denial of benefits is **AFFIRMED**, and this matter is **DISMISSED WITH PREJUDICE**.

This is the final Order in this case, for purposes of Fed. R. Civ. P. 58.

It is so **ORDERED**.

ENTER this 16th day of January 2018.

_____
ALETA A. TRAUGER
United States District Judge